IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED PET GROUP, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CASE NO. |
| ) | |
| JOHN DOE(S) ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendants. ) | |

## COMPLAINT

United Pet Group, Inc. ("UPG") states the following for its Complaint against John Doe(s) ("Defendants").

## BACKGROUND

1. UPG's claims arise from Defendants' unlawful distribution and sale of counterfeit products and/or packaging using UPG's well-known and widely successful FURminator® trademarks and logos (hereinafter "FURminator Marks") on internet auction websites and other online locations.

2. In August 2012, UPG purchased a FURminator product from smartpetshops.com. UPG confirmed that the sample is a counterfeit product, and promptly sent a demand letter to smartpetshops.com care of a private post box. UPG did not receive a response to its letter, but shortly thereafter, Defendants shut down the smartpetshops.com site. Defendants have since gone into hiding, leaving UPG without the necessary information to properly identify Defendants, or means to determine the extent of Defendant's infringement, and to stop Defendants' counterfeiting.

## JURISDICTION AND VENUE

3. UPG asserts claims for federal trademark counterfeiting and infringement, unfair competition, false designation of origin, and false description under the Lanham Act. UPG seeks injunctive relief to prevent the sale, shipment, and/or further distribution of the counterfeit and infringing goods, an accounting of profits, treble damages and/or statutory damages, as well as recovery of attorneys' fees and other relief available under the Lanham Act.

4. Jurisdiction is proper in this Court pursuant to 15 U.S.C. § 1121 (Lanham Act) and under 28 U.S.C. §§ 1331 (federal question), 1338 (trademarks and unfair competition related thereto), and 1367 (supplemental jurisdiction).

5. On information and belief, Defendants sold counterfeit FURminator branded products on smartpetshops.com, and likely sell FURminator branded products on other internet websites. This Court has personal jurisdiction over Defendants because Defendants sell and offer for sale counterfeit products in Missouri and in this judicial district, committed the tortious acts described herein in Missouri and in this judicial district, or otherwise established contacts with Missouri and this judicial district sufficient to make the exercise of personal jurisdiction proper.

6. Venue is proper under 28 U.S.C. § 1391(b) because, on information and belief, a substantial part of the events giving rise to the claims occurred in this district.

## JURY TRIAL DEMANDED

7. UPG hereby demands a jury on all triable issues.

## THE PARTIES

8. UPG is a Delaware corporation. FURminator is a division of UPG with offices in St. Louis, Missouri. UPG is the successor to FURminator, Inc., a corporation formed by the husband and wife team of David and Angela Porter in 2002, and acquired by UPG in 2011.

9. Defendants operated and sold pet products, including counterfeit products, through the smartpetshops.com website, and likely through other websites as well.

10. The smartpetshops.com domain was registered by Domains by Proxy, LLC, a company that offers domain privacy services such that the domain owner's personal identification is kept private.

11. Despite UPG's efforts, it is not reasonably possible for UPG to identify Defendants by name at this time. Thus, the true names and capacities, whether individual, corporate, associate or otherwise, of Defendants are unknown to UPG, who therefore sues Defendants by such fictitious names.

12. UPG believes that information obtained in discovery will lead to the identification of Defendants' true identities, and permit UPG to amend this Complaint to state the same. Specifically, UPG intends to subpoena the owner of Studio City Mailboxes, the company who leases the mailbox to Defendants, and Domains By Proxy, LLC, the company who registered the smartpetshops.com website, in order to learn the identity and other important information about Defendants.

13. UPG further believes that the information obtained in discovery may lead to the identification of additional infringing parties to be added to this Complaint as Defendants.

## FACTS COMMON TO ALL CLAIMS

### A. FURminator's Marks

14. UPG designs, manufactures, markets, advertises, distributes, and sells in interstate commerce various types of pet products, including but not limited to, FURminator® DeShedding Tools. Examples of tools sold under the FURminator name are depicted below:



15.     FURminator® DeShedding Tools have and continue to enjoy significant commercial success as well as widespread approval in the pet industry.  FURminator® DeShedding Tools have received numerous accolades, including several "Editor's Choice" awards by pet product publications, numerous sales awards from major pet product retailers and have been described as one of the best grooming products tested by the Tufts University School of Veterinary Medicine.  Since FURminator's widespread introduction in 2003, the FURminator DeShedding® Tools have enjoyed substantial commercial success.  Sales of FURminator® DeShedding Tools have accounted for the majority of FURminator's revenues.

16.     Beginning at least as early as 2002, UPG and its predecessors-in-interest adopted and began using the FURMINATOR trademark.  Since that time, UPG and its predecessors-in-interest have continuously used the FURMINATOR trademark and other trademarks. FURMINATOR has been used alone or in connection with the distinctive "Paw" logo (shown below) in interstate commerce in the United States for the purpose of identifying FURminator's pet products and for distinguishing goods from the goods of others.

17. For ease of reference, these trademarks are referred to collectively herein as the "FURminator Marks." The FURminator Marks have been used in connection with grooming tools at least as early as the 2002.

18. FURminator's trademark registrations pertinent to this action are as follows:

| FURminator's U.S. Trademarks |||
|---|---|---|
| Reg. No | Mark | Goods |
| 3,238,141 | FURMINATOR (Stylized and/or with Design) | Non-medicated, non-veterinary grooming preparation, namely deshedding hair conditioner for pets; **brushes for pets** |
| 2,965,342 | FURMINATOR | deshedding conditioner for pets; **pet brush, namely a grooming device for fur bearing animals in the nature of a brush-like instrument for removal of the animal's loose or shedding hair** |
| 3,544,400 | Paw Design | Non-medicated, non-veterinary grooming preparation, namely deshedding hair conditioner for pets; **pet brush, namely a grooming device for fur bearing animals in the nature of a brush-like instrument for removal of the animal's loose or shedding hair**; dog treats |

19. Copies of the Registration Certificates and the relevant assignment information for the above-listed federal trademark registrations are attached hereto as Exhibit 1.

20. The registration of the FURminator Marks on the Principal Register with the United States Patent and Trademark Office constitutes prima facie evidence of their validity and are conclusive evidence of UPG's exclusive rights to use the FURminator Marks in commerce in

connection with the goods named therein, and commercially related goods. 15 U.S.C. § 1057. The registration of the FURminator Marks also constitutes constructive notice of UPG's ownership and exclusive rights in the FURminator Marks. 15 U.S.C. § 1072.

21. UPG's products bearing the FURminator Marks are sold throughout the United States.

22. In accordance with 15 U.S.C. § 1111, the FURminator Marks are, and have been, displayed on UPG's products or on the packaging, marketing, or advertising materials, for such products, and are and were accompanied by the notation "®" to provide notice that the FURminator Marks are federally registered.

23. UPG has advertised and promoted grooming tools sold under the FURminator Marks throughout the United States by means of various media, including, but not limited to, television, the Internet, and magazines.

24. As a consequence of UPG's continuous use of the FURminator Marks throughout the United States, and due to the significant investment of time, money, and efforts, widespread sales, and the high quality of UPG's products sold in connection with the FURminator Marks, these FURminator Marks have acquired value and are well-known to the consuming public and trade as identifying and distinguishing the source of UPG's products.

25. UPG also takes significant steps to protect its valuable intellectual property rights.

26. UPG, and/or its predecessors in interest registered U.S. Trademark Registration Nos. 3,238,141 and 2,965,342 with U.S. Customs and Border Protection. These registrations were recorded as CBP Recordation Nos. 10-00034 and 10-00035. U.S. Customs and Border Protection detains imported products suspected to be counterfeit and reports these incidents to UPG.

27. UPG monitors internet marketplace sites such as Amazon.com and eBay.com for suspected sellers of counterfeit FURminator merchandise.

28. Upon locating a suspected seller of counterfeit FURminator products, UPG purchases sample products from the seller. These products are analyzed by UPG to determine their authenticity.

29. UPG investigates suspected manufacturers, distributors, and retailers of unauthorized counterfeit FURminator products and then takes steps to halt such unauthorized sales, including notifying law enforcement, as appropriate.

**B. Defendants' Conduct**

30. Defendants traffic in counterfeit grooming tools bearing counterfeits of UPG's FURminator Marks (the "Counterfeit Products").

31. Upon information and belief, Defendants, without authorization or license from UPG, knowingly and willfully used or reproduced UPG's FURminator Marks in connection with their distributing, importing, shipping, advertising, offering for sale, selling, and facilitating the sale of Counterfeit Products in commerce.

32. On information and belief, Defendants made substantial sales of Counterfeit Products in the United States. Defendants offer for sale, sell, distribute, and facilitate the sale of Counterfeit Products via smartpetshops.com, and likely other websites as well. A screenshot of the website is shown below.



33. UPG became aware of Defendants selling products bearing the FURminator Marks in 2012.

34. Upon information and belief, Defendants sold goods bearing the FURminator Marks on smartpetshops.com.

35. UPG purchased a sample product from smartpetshops.com in August 2012. The sample arrived from Smart Pet Shops, 3940 Laurel Canyon Blvd. #243, Studio City, CA 91604-3709.

36. UPG confirmed that the sample is a Counterfeit Product.

37. UPG sent a demand letter to smartpetshops.com.

38. Defendants did not respond to the demand letter, but took down the smartpetshops.com website. A screenshot of the shut-down smartpetshops.com site is shown below.



39. Upon information and belief, Defendants purchased the Counterfeit Products from a source or sources that are not authorized or licensed by UPG to manufacture, offer for sale, or sell the products bearing the FURminator Marks.

40. The Counterfeit Products are not genuine FURminator products. UPG did not manufacture, inspect, or package the Counterfeit Products, prior to the unauthorized sale and did not approve the Counterfeit Products for sale or distribution.

41. Defendants are not authorized by UPG to manufacture, advertise, distribute, export, import, ship, sell, offer to sell, or facilitate the sale of any products bearing UPG's FURminator Marks that are not authentic products.

42. Defendants' use of UPG's FURminator Marks in connection with the advertising, marketing, distribution, import, export, shipping, offering for sale, sale, and facilitation of the sale of Counterfeit Products caused, and in the future are likely to cause, confusion among potential customers who will be deceived into believing that Defendants' Counterfeit Products are authentic products, thus harming the consuming public and irreparably harming UPG's valuable reputation and goodwill.

43. The aforesaid conduct is causing UPG irreparable harm, for which there is no adequate remedy at law.

## COUNT I
## FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT
## (15 U.S.C. §§ 1114, 1116)

44. UPG repeats and realleges the foregoing paragraphs as if fully set forth herein.

45. Without authorization or consent, Defendants shipped, offered for sale, sold, or facilitated the sale of Counterfeit Products bearing marks that are reproductions, counterfeits, copies, or colorable imitations of UPG's FURminator Marks to the consuming public in direct competition with the sale of UPG's authentic products, in or affecting interstate commerce, in violation of the Lanham Act, specifically 15 U.S.C. § 1114 and § 1116.

46. Defendants' use of reproductions, counterfeits, copies, or colorable imitations of UPG's FURminator Marks are likely to cause confusion, mistake, or deception as to the source or sponsorship of Defendants' goods and cause the consuming public to believe that Defendants' goods have been manufactured or approved by UPG or that Defendants are legitimately connected with UPG or authorized by UPG to use the FURminator Marks.

47. Defendants' conduct is causing immediate and irreparable injury to UPG, its goodwill and reputation, and will continue to damage UPG and deceive the public unless temporarily, preliminarily, and permanently enjoined by this Court pursuant to 15 U.S.C. § 1116.

48. In addition to injunctive relief, UPG is entitled to recover actual damages, Defendants' profits, costs, and reasonable attorneys' fees under 15 U.S.C. § 1117 in an amount to be determined at trial. Any such damages and awards should be trebled pursuant to 15 U.S.C. §1117(b).

49. UPG reserves the right to seek statutory damages pursuant to 15 U.S.C § 1117(c).

50. UPG is further entitled to an Order directing that all items in the possession, custody, or control of Defendants bearing reproductions, counterfeits, copies, or colorable imitations of UPG's registered marks be delivered up to UPG and destroyed pursuant to 15 U.S.C. § 1118.

### COUNT II
### FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a))

51. UPG repeats and realleges the foregoing paragraphs as if fully set forth herein.

52. Defendants' unauthorized use of reproductions, counterfeits, copies, or colorable imitations of UPG's FURminator Marks are likely to cause confusion, to cause mistake, or to deceive the consuming public and the trade as to the origin, sponsorship, or approval of Defendants' products.

53. As a result of Defendants' unauthorized uses of reproductions, counterfeits, copies, or colorable imitations of UPG's FURminator Marks in connection with Counterfeit Products, the consuming public and trade is likely to believe that Defendants' goods have been manufactured or approved by UPG, and such use falsely represents Defendants as being legitimately affiliated, connected, or associated with or authorized by UPG and places UPG's valuable and hard-earned reputation and goodwill in the hands of the Defendants in violation of 15 U.S.C. § 1125(a).

54. Defendants' conduct is causing immediate and irreparable injury to UPG, its goodwill and reputation, and will continue to damage UPG and deceive the public unless temporarily, preliminarily, and permanently enjoined by this Court pursuant to 15 U.S.C. § 1116.

55. In addition to injunctive relief, UPG is entitled to recover actual damages, Defendants' profits, costs, and reasonable attorneys' fees under 15 U.S.C. § 1117 in an amount to be determined at trial. Any such damages and awards should be trebled pursuant to 15 U.S.C. § 1117(b). UPG reserves the right to seek statutory damages pursuant to 15 U.S.C § 1117(c).

56. UPG is further entitled to an Order directing that all items in the possession, custody, or control of Defendants bearing reproductions, counterfeits, copies, or colorable imitations of UPG's registered marks be delivered up to UPG and destroyed pursuant to 15 U.S.C. § 1118.

## COUNT III
## COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

57. UPG repeats and realleges the foregoing paragraphs as if fully set forth herein.

58. Defendants are and have been infringing UPG's trademarks and engaging in unfair competition by selling unauthorized grooming tools bearing the FURminator Marks.

59. This Count is for unfair competition under the common law, including the law of Missouri and/or any of the other states where the parties do business.

60. UPG owns valid trademark rights in the FURminator Marks as described above.

61. Defendants' use of the FURminator Marks on the counterfeit tools as described above is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection or association with UPG, or as to the origin, sponsorship, or approval of Defendants' goods or commercial activities by UPG.

62. Defendants' conduct has damaged and will continue to damage UPG.

## COUNT IV
## MISSOURI UNFAIR COMPETITION

63. UPG repeats and realleges the foregoing paragraphs as if fully set forth herein.

64. The FURminator Marks are distinctive, either inherently or through acquired secondary meaning, and are thereby a valid common law trademark.

65. UPG is the rightful owner of all common law rights in the FURminator Marks as used in connection with, among other things, the sale of pet grooming products including tools.

66. Defendants' use of the FURminator Marks for identical goods is deceptive and likely to cause confusion, or to cause mistake, or to deceive an appreciable number of ordinary buyers as to the source of or association of the FURminator Marks.

67. Defendants' acts constitute unfair competition, unfair trade practice and infringement of FURminator's rights, and are in violation of the laws of the State of Missouri, including but not limited to Mo. Rev. Stat. § 407.020 *et seq.*

68. Upon information and belief and after a reasonable opportunity for further investigation or discovery, UPG is likely to have evidence that Defendants' use of the FURminator Marks is done with evil motive and reckless indifference to UPG's rights.

69. Defendants' conduct has damaged and will continue to damage UPG.

70. Defendants have been unjustly enriched by their infringing acts.

## PRAYER FOR RELIEF

WHEREFORE, UPG requests the following relief:

A. For judgment:

  a. That Defendants engaged in trademark infringement in violation of 15 U.S.C. § 1114 and the common law; Defendants used counterfeit marks in violation of 15 U.S.C. § 1116; Defendants engaged in unfair competition, false designation of origin, and trademark infringement in violation of 15 U.S.C. § 1125(a);

  b. Defendants have been unjustly enriched; and Defendants' acts of infringement, counterfeiting, dilution, unfair competition were willful.

B. That preliminary and permanent injunctions be issued enjoining Defendants, and their agents, affiliates, and all persons in concert or participations with any of them, and any entity owned or controlled by any of the Defendants, who receives actual notice of the order by personal service or otherwise, from:

  a. using any of UPG's FURminator Marks, including, but not limited to those identified above, or any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of UPG's trademarks or trade names in connection with any goods or services or in connection with the importation, promotion, advertisement, sale, offering for sale, manufacture, production, dissemination, or distribution of any pet grooming products; processing, packaging, importing, or transporting any product that is not a genuine product of UPG bearing any of UPG's trademarks or trade names or any mark

that is a simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of UPG's trademarks or trade names;

b. using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act which can, or is likely to, lead members of the consuming public or trade to believe that Defendants are associated with UPG or that any product imported, manufactured, distributed, or sold by the Defendants is in any manner associated or connected with UPG, or is authorized, licensed, sponsored, or otherwise approved by UPG;

c. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (b) above or taking any action that contributes to any of the activities referred to in subparagraphs above, or any other activity that consists of or contributes to the sale of counterfeit or infringing FURminator products bearing any of UPG's trademarks or trade names, including but not limited to, the FURminator Marks.

C. That the Defendants, at their own expense, recall any and all products that bear any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of UPG's trademarks or trade names from any distributors, retailers, vendors, or others to whom the Defendants have distributed or sold such products, and that such recall notices and other actions be taken within five (5) days after service of judgment with notice of entry thereof.

D.  That Defendants, at their own expense, transfer to UPG the domain name registrations for all domain names on which Defendants use UPG's FURminator Marks.

E.  That Defendants deliver up to UPG's attorney for destruction, within five (5) days after service of judgment with notice of entry thereof, all goods, labels, tags, signs, stationery, prints, packages, promotional and marketing materials, advertisements and other materials (a) currently in their possession or under their control or (b) recalled by the Defendants pursuant to any order of the Court or otherwise, incorporating any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of UPG's trademarks or trade names, and all plates, molds, matrices, and other means of making the same, and that Plaintiff be permitted to destroy all such goods without compensation to any of the Defendants.

F.  That Defendants preserve all records (including electronically stored information) and other documents concerning all transactions relating to their acquisition, import, purchase, or sale of any goods bearing or including any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of UPG's trademarks or trade names, and that all such materials be made available to UPG for review, inspection, and copying on UPG's request.

G.  That Defendants provide UPG with the names, addresses, and all other contact information in their possession (e.g., telephone numbers, fax numbers) for the source of all products that bear or include any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of UPG's trademarks or trade names, including all manufacturers, distributors, or suppliers.

H. That Defendants provide UPG with the names, addresses, and all other contact information in their possession (e.g., telephone numbers, fax numbers) for the customers who purchased all products that bear or include any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of UPG's trademarks or trade names, including all manufacturers, distributors, or suppliers.

I. That Defendants shall file with the Court and serve upon UPG's counsel within thirty (30) days after service of judgment with notice of entry thereof upon them a report in writing under oath, setting forth in detail the manner and form in which they have complied with the all of the above.

J. That each Defendant account for and pay over to UPG three times the profits realized by each Defendant from its infringement of UPG's trademarks and trade names and from its unfair competition with UPG.

K. That UPG be awarded its actual damages, trebled pursuant to 15 U.S.C. § 1117(a) & (b), or, if UPG elects, statutory damages as the Court considers just, up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, pursuant to 15 U.S.C. § 1117(c), arising out of Defendants' acts of willful trademark infringement and counterfeiting.

L. That UPG be awarded interest, including pre-judgment interest, on the foregoing sums in accordance with 28 U.S.C. § 1961.

M. That UPG be awarded its costs in this civil action, including reasonable attorneys' fees and expenses, pursuant to 15 U.S.C. 1117(a) and other applicable laws.

N. That UPG be awarded such other and further relief as the Court may deem just and proper.

Dated: October 29, 2012                                   Respectfully submitted,

**Thompson Coburn LLP**


By: /s/ Matthew A. Braunel
    David B. Jinkins, #87,078
    Matthew A. Braunel, #109,915
    One US Bank Plaza
    St. Louis, MO  63101
    (314) 552-6000
    (314) 552-7000 (fax)

*Attorneys for Plaintiff*
*United Pet Group, Inc.*